Eric B. Smith Stevens County Attorney 209 East Sixth, Suite A Hugoton, Kansas 67951
Dear Mr. Smith:
As attorney for Stevens County, you request our opinion on several issues concerning the authority that a board of county commissioners has over the activities and employment of an appointed board of trustees and administrator of a county home for the aged (home).
You have indicated the home in Stevens County was established in 1962 pursuant to K.S.A. 19-2106 et seq. You have also indicated that in approximately 1985 the County terminated a lease agreement with a private corporation and has since that time provided for the management of the home with an appointed Board of Trustees. Your questions are summarized as follows:
 1. If the Board of County Commissioners feels that an administrator has acted in such a way that is detrimental to the County as a whole and which could potentially subject the County to civil liability, does the Board have any authority to terminate the employment of the administrator of the home if the Board of Trustees refuses to do so?
 2. Is there a procedure whereby the Board of County Commissioners can remove a trustee prior to the completion of the trustee's appointed term and, if so, what, if any, reason is required before the Board of County Commissioners can remove a trustee? Are personal differences enough or must there be some misconduct on the part of the trustee? Is the refusal by the Board of Trustees to terminate an administrator sufficient grounds for removal of the trustees?
 3. Can the Board of Trustees establish by-laws determining the scope of its authority without seeking the approval of the Board of County Commissioners?
 4. Can the Board of County Commissioners, by the resolution process, restrict the power of the Board of Trustees and require County approval of all decisions concerning the employment of an administrator?
Before dealing with each of your specific questions, it is first necessary to discuss the source of authority from which the appointed Board of Trustees and the Board of County Commissioners derive their power to operate and supervise the home.
There are two possible methods which a board of county commissioners may use to appoint a board of trustees for a home for the aged. First, a board of county commissioners may appoint a board of trustees to operate the home by the authority which the State Legislature granted to it in K.S.A 19-2110. The second method which a board of county commissioners may use to appoint a board of trustees to operate a home is by exercising its power of home rule. Because the sources of power differ under these two methods, the authority of a board of county commissioners over a board of trustees and the administrator of the home depends on which of these methods is employed in appointing the board of trustees.
In order to understand the source of authority under the first method, we must first look to the statute which authorizes the appointment of a board of trustees to operate the home.
The pertinent portion of K.S.A. 19-2110 states:
 "Every home for the aged established under this act and not leased by the board of county commissioners as provided for under K.S.A. 19-2112 or any amendments thereto, may be operated under the supervision of the county board of commissioners or if the board of county commissioners determines that it is in the best interests of the county such board may appoint a board of trustees to operate the home or may designate the board of trustees of the county hospital of the county as the board of trustees for the operation of such home. . . . The county board of commissioners or board of trustees of such home is hereby authorized to promulgate and adopt rules and regulations pertaining to the operation, management and control of homes for the aged. The county board of commissioners or board of trustees of such home shall appoint a responsible and qualified person who shall at all times be in charge of the home, who shall be known as the administrator. . . ." (Emphasis added.)
This statute grants boards of county commissioners authority to supervise the operation of a home or, if the board so chooses, to delegate this authority by appointing a board of trustees. If a board of county commissioners appoints a board of trustees pursuant to this statute, the underlying authority for the board of trustees to operate the home emanates directly from the legislation and not from the board of county commissioners. Under K.S.A. 19-2110, the county commissioners merely exercise the grant of authority to appoint a board of trustees. Therefore, a board of trustees appointed pursuant to that statute does not derive its authority from the appointing board of county commissioners and it is separate and autonomous from the board of county commissioners. See Attorney General Opinions No. 77-307 and 85-106.
The next point of consideration is whether K.S.A. 19-2110
limits the authority of operation of the home to either the board of county commissioners or to a board of trustees, or whether the statute allows a board of county commissioners to retain some authority to oversee the supervision or operation of the home when it has appointed a board of trustees.
In the absence of any case law or other authority to clarify the meaning of the statute, we must look to the rules of statutory construction to aid in discerning its meaning. The fundamental rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the Legislature governs when that intent can be ascertained from the statute. Davey v. Hedden, 260 Kan. 413, 419 (1996). If the intent is subject to different interpretations, the Court is guided by certain presumptions when construing a statute. It is presumed the Legislature understood the meaning of the words it used and intended that words used have their ordinary and common meaning. State v. Robinson, 261 Kan. 865, 875 (1997).
The key to resolving the question before us is to determine the meaning of the word "or" in this provision of the statute. "Or" is defined as "[a] disjunctive particle used to express an alternative or to give a choice of one among two or more things." Black's Law Dictionary 1095 (6th Ed. 1991). Applying this definition to the provision of the statute, it follows that there is a choice of one among the three available entities that may potentially supervise the operation of the home. If the Legislature had intended for the board of county commissioners to retain control over the board of trustees, it could have used another term in place of "or" such as "and," "in conjunction with," or any of the many other possible choices of words. By its choice of the word "or," the Legislature expressed its intent that the authority to supervise the operation of the home is to be exercised by one body, either a board of county commissioners or a board of trustees.
In summary, if the first method of creating a board of trustees is employed, the authority to supervise and operate the home emanates directly from the State Legislature, not from the board of county commissioners. The board of trustees would operate autonomously from the board of county commissioners and the board of county commissioners retains none of the authority granted by the Legislature to supervise the operation of the home.
Having established this foundation, we can answer your first three questions relating to a board of trustees appointed under the provisions of K.S.A 19-2110. In answer to your first two questions, because the board of county commissioners retains no express or implied authority to supervise or to oversee the operation of the home and because the board of trustees is appointed by authority which emanates directly from the Legislature, the board of county commissioners does not have authority to terminate the employment of an administrator or of a trustee. (However, both an administrator and a trustee could be subject to removal through ouster proceedings for public officers in accordance with K.S.A. 60-1205 et seq. See Attorney General Opinions No. 88-154 and 77-307 for a more thorough discussion of this topic.) In answer to your third question, the board of trustees, under its grant of power from the Legislature, has the authority to establish by-laws determining the scope of its authority without seeking approval from the board of county commissioners.
Your final question is whether a board of county commissioners, by the resolution process, can restrict the power of a board of trustees and require county approval of all decisions concerning the employment of an administrator. To answer this question, we must examine the second method for appointing a board of trustees to oversee a home for the aged.
Because the act for the establishment of a county home for the aged (L. 1953, Ch. 167) is non-uniform in its application, a board of county commissioners may exercise its home rule powers under K.S.A. 1996 Supp.19-101a and K.S.A. 19-101b to exempt itself from all or part of the provisions of K.S.A. 19-2110. Through home rule, a board of county commissioners may establish a board of trustees and retain as much control over the board of trustees as it believes to be in the best interests of the county. See Attorney General Opinion No. 80-59.
If a board of county commissioners establishes a board of trustees through home rule powers, the authority of the resulting board of trustees emanates from the county's home rule resolution. Therefore, a county may, by charter resolution, exempt itself from the provisions of K.S.A. 19-2110 and enact rules and regulations for the operation, management and control of a home as the board of county commissioners determines is in the best interests of the county.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Donna M. Voth Assistant Attorney General
CJS:JLM:DMV:jm